May it please the Court. My name is Bradley Rose. I'm here today on behalf of the appellants Lauren Shirk and Jennifer Rose. Mr. Rose, I understand that the amicus in this case is going to share some of your time?  All right. You have a total of 15 minutes per side. So however you share, it's – and you're going first, so you're going to be crowding his remaining time. I just suggest you keep that in mind. Thank you, Your Honor. I will. As I was preparing my comments for today's hearing and going through the papers that have been on file, I noticed that the majority of the papers set forth what is an agreement between the parties. Whether or not this Court is looking at the first agreement between the Bureau of Indian Affairs and the Gila River Indian Community, the 1998 638 contract, or whether or not they're looking under the – to the 2003 self-governance compact or the 2007 funding agreement, the Federal Tort Claims Act applies cover to Gila River. You know, I must say, I'm a little puzzled why you – why you rely on the 638 agreement, since the 638 agreement seems to be directed at tribal law within the reservation, whereas when you get down to the self-governance compact and the funding agreement, it's not at all clear to me that that's directed only to activity on the reservation. That is correct, Your Honor. And appellants contend that the 638 agreement was superseded by the substitute. So then you're not depending on it. No. Okay. No. But the district court relied on that. But you are not? But I am not. Okay. No. It is our contention that that was an erroneous – And it's been overcome by later agreements, ultimately arriving in the Gila River police general orders and the A.Z. Post and things like that. That is correct, Your Honor. Well, ultimately, you probably have to come within section 314, do you not, if you're going to be able to pursue this? That is correct, that the police officers have to be acting within the course and scope of their employment and carrying out the agreed-to police functions of the contract. No, no, no. No, no, carrying out the contract. The contract or agreement. Right. So do you wish to zero us in on your contention of what contract or agreement this police officer was carrying out when he stepped out of his car at the red light to see if the driver of the car in front of him was in control of his car? That is correct. We would contend that the subsequent 2003 compact and the funding agreement both outline general parameters of the police program that is operated by the community. Could you give me a citation of chapter and verse, page number preferably, of the 200-2003 compact which says that the GRIC officers will carry out State arrest functions on State property, not on reservation property? I'd really like to see that. Yeah. I don't believe that that language is in. No, neither do I. But would the same answer obtain as to the funding agreement? That is correct, Your Honor. All right. So you want us to imply that obligation from some other language. That is correct, Your Honor. Tell me what is the implying language. The implied language is under all of the agreements, training, continuing police training was deemed mandatory and necessary in carrying out the police functions. Was it specifically A.Z. Post in this case? Well, A.Z. Post was also a certification that was required. And obtained by at least one of the officers. That is correct, both of the officers. Are you arguing that this automobile accident occurred during training or related to training? No, we're arguing that the training is relevant because the officers were returning from the training, thereby putting them in the course and scope of their employment as Gila River Indian officers. Well, that's fine until they then intervene in the situation. And then pursuant to the A.Z. Post certification, they had the authority, the jurisdictional authority within the state to get out of their car and approach the Because they're made state peace officers. Because they're certified state police officers through the A.Z. Peace officer. Peace officer, yes, through the certification. And that when the Bureau of Indian Affairs requires that they have this training and they have this certification. And conversely, while there is nothing that says under the 2003 compact that they're obligated, that they're allowed to enforce state law off of the reservation, off of Indian territory, there's nothing that prohibits it. But the Section 314, as my brother O'Scanlan pointed out, doesn't say that they are liable if they are carrying out some duties which are not prohibited. It says that they have to be carrying out the contract or agreement. The fact that they were authorized or trained to do the arrest doesn't mean that they had the obligation to do it. To whom were they obligated to do the inspection and arrest? Can you give me who's the obligee of the contract or agreement? I'm not sure I follow the question. Well, in any contract, there's an obligor and an obligee. Right. Performance is due to the obligee. Tell me, what contract was there that and who was the obligee of the contract that the officer should have stepped out of his car? Well, I don't think, if we're looking within the four corners of the contract for a provision that allows them to do that, I don't think that the contract covers every conceivable law enforcement function. Suppose that Grick had said, we're going to punish you for not stepping out of the car, wouldn't a perfect defense be that I'm not obligated to step out of the car and do any arrest? I'm trained to do it. I'm authorized to do it. Nowhere am I obligated to do it. Well, and I think that's the language, is are they authorized to do it under the contract, whether or not they chose to act in that particular situation. And as Officer Lancaster testified in his deposition, his purpose of getting out of the car was not to enforce State law. He was not attempting to stop the man. He wasn't they didn't attempt to pull the car over. He merely wanted to rush towards the car, knock on the guy's window and say, hey, slow it down. So I don't think he was he was Well, that's presumably enforcing State law, is it not? He's operating under the authority that is given to him under the State. But I'm not sure what State law he's enforcing. Traffic laws. You know, I mean, his comment was I was going to go knock on the door and see what was going on. It was more of an investigatory type stop, if it was considered a stop at all. Counsel, you're down to seven minutes. I just remind you, if you want to share time, keep that in mind. Well, I am going to go ahead and relinquish my time to the counsel for the Gila River Indian community. Very well. Thank you. Please support. Good morning. My name is Tom Murphy, and I'm here on behalf of the Gila River Indian community. This case raises a straightforward issue about whether tribal police officers who are acting in the course and scope of their employment in a program contracted under a self-determination compact between the tribe and the United States, which is silent as to all preservation activities, but requires the very authority used by those officers to engage in those activities, are carrying out the compact and thereby covered under the FTCA. The community contends that they were. In regard to the first We've pretty much heard this argument from your colleague. What additional focus do you want us to take into account? The additional focus would be this, Judge Escanlan, that the compacts between the United States and Indian tribes allow those tribes to perform functions that were previously performed by the United States. For example, with regard to Indian tribes, prior to tribal police, there would have been a BIA police department servicing the tribes. The question in this particular case would be whether or not those, if the BIA officers had been performing those same activities, would they have been covered under the FTCA? And I think the answer is clearly, yes, they would for a number of reasons. Even if it's off the reservation? Yes. I think if one looks at the authority that the BIA relies upon for its own police officers, that authority is replete with references not only to acting outside of Indian country, but also to the fact that those officers retain their status when they do perform outside of Indian country. And I think that that is an important fact in this particular case. Is this the Indian Law Enforcement Reform Act that you're talking about or something else? I think part of the authority comes from the Indian Law Enforcement Reform Act, Your Honor, but I think also the BIA was performing police services on Indian nations long before the Indian Law Enforcement Reform Act. And those were the functions that were transferred to the community through the self-governance agreements. The BIA's own express policy with regard to cross-deputization agreements undercuts the argument they make that their law enforcement services are expressly limited to Indian country. Their law enforcement handbook identifies at least three instances in which its own officers may act outside of Indian country. Those include obtaining evidence, preserving order, and apprehending suspects. And it also authorizes deputization of BIA police officers by state authorities. In Arizona, the Arizona's Court of Appeals has held that Arizona Post certification, which is a certification, not a training requirement, that is required under the community's then-current multi-year funding agreement, allows, basically states that AZ Post is not a training requirement but a certification requirement that is mandated and the equivalent under Arizona law of cross-deputization. And that's the Arizona case of Stay versus Nelson. The community believes it's more than plausible that Bureau of Indian Affairs officers from time to time engage in off-reservation training and law enforcement activities. It's also interesting to note that the Arizona statute, which is Arizona Revised Statutes 13-3874, when that was enacted in 1972. Kennedy. But does it matter? Does it matter that they were returning from a training mission when this happened or were they state peace officers under AZ Post, irrespective of whether they were being trained at the time or not? I believe that it does matter that they were returning from training to the extent that they were in the course and scope of their employment and that that employment allows them to exercise the AZ Post authority. In Arizona, if a servant is returning from his work and going to his home, is he still in the course and scope of his employment under Arizona law? I don't know if it's the case. That's what happened here. They were returning from a training session and going home. They're in the course and scope of their employment? I believe the Arizona State Court did hold that they were acting in the course and scope of their employment. All right. The United States position is that the community's police officers exercising the AZ Post authority required by the 2007 through 2011 multiyear funding agreement and doing the same thing that BIA police officers are permitted to do under the BIA's own policies are not carrying out the compact. The community believes that this is a result that is contrary to law and urges reversal. Thank you. Counsel, what is the strongest argument you can give us that a contract or agreement specifically authorizes the enforcement of State laws? I'm looking for that, and I haven't heard it yet. Your Honor, I would say that it's in the 2007 through 2011 multiyear funding agreement, and that is in the court's record at document number 31-3. That's a requirement that the community is required to ensure that its officers are AZ Post certified. The AZ Post statute, in turn, which makes them Which means it ensures that they become Arizona peace officers under Arizona laws. Yes. And the statute under which they are allowed to be certified requires them to hold and exercise the authority of Arizona state peace officers. But you're asking the government through the Federal Tort Claims Act to be, in effect, a guarantor with respect to any off-the-reservation activities these tribal police officers engage in. Your Honor, we That's quite a stretch, isn't it? No, it isn't. When Section 314 was adopted, the only legislative history of the extension of FTCA coverage indicates that FTCA coverage was extended to replace liability coverage. And I think under the law, that is to be interpreted broadly in favor of the tribe. Thank you. Thank you, counsel. We'll hear from the governor. Good morning. May it please the Court. I'm Jefferica Jenkins-Lee from the Department of Justice here on behalf of the United States. What the plaintiffs and the amicus seem to be arguing is that any time there is a 638 compact between a tribe and the VIA, any time that an employee of that tribe under the compact does anything that's in the course of his employment, then the United States would be on the hook under the FTCA. And that is not what I think that's exactly what Mr. Murphy said in answer to my question, if I heard him correctly. Yes, Your Honor. And it is our position, of course, that that is not what Section 314 states. And it's not what it means. Section 314 provides, of course, that when there is a 638 contract or compact and an employee is working within the scope of his employment and carrying out the contract, then the United States would be liable under the FTCA. If Congress had intended to cover any action by an employee under a 638 contract, it would have written that section to say, well, whenever there is a contract, whenever there is a contract between a tribe and the government under 638, a tribal employee is not a Federal employee except when under the FTCA. It would have said some language such as that. Now, counsel have argued that the original 638 contract was completely expired and has no relevance here. However, the multiyear funding agreement and the 2003 compact, the 2003 compact specifically says that the tribe is taking over or is continuing to operate the programs that had previously been operated under the 638 contract. The purpose of the compact under the Tribal Self-Governance Act was to allow tribes to have greater autonomy and flexibility in how they run their programs and really how they allocate their resources. Now, is there a presumption that's limited to Indian country only? Well, the compact, because these are programs that the Bureau was running in Indian country or on behalf of Indian tribes, then the presumption would be that it's to continue to run programs that would serve the best interests of the community. We have never taken the position that there was anything wrong with what the officers did here They were authorized to do that under Arizona law, under their Arizona post certification. It's just that that wasn't what BIA contracted with them for. And the only place I can see where it might have contracted with them for is the funding agreement, which requires, it doesn't say they may, it doesn't say they have to be trained, it says they have to be AZ post certified. Am I right about that? That's correct. Now, then the government is saying you must be AZ post certified, and to be AZ post certified you become a state peace officer for certain purposes. The government said they had to do that. And that was so that because of the overlapping jurisdictions, you have the federal law that applies on the reservation. You have tribal law. You have state law. And historically there's been a problem on Indian reservations with there being a lack of response time, say if there was a state crime that was committed on the reservation. There is confusion over who had jurisdiction over what. So the requirement of the AZ post certification is so that the officers would be fully able to enforce state law if it affected, as it affected the tribe or the reservation. There are many instances when tribal officers have to leave the reservation. It might be a crime that started on the reservation and they're pursuing a suspect that then went to a state. Hot pursuit, for example. That's correct, Your Honor. And before, if the tribal officer didn't have AZ post certification, he wouldn't be able to arrest a suspect that they captured. They may be able just to hold that person until they. What says that? I mean, once they're Arizona post certified, what says that their powers that come along with that are limited to what you say they are? Is it implied because they're from the funding agreement? I mean, where does the limitation come? Well, as I guess I didn't complete my thought before, that we believe that the 638, the original 638 contract was referenced and it was referenced specifically in the compact. And the programs, and I think this is in the attachment to Collins. So you're saying that limitation comes from 638, the 638 agreement? The original agreement and in the funding agreement, they do not repeat everything that was from 638 contract. But you're saying that's implied, that the limitation of powers that come with being AZ post certified, Arizona post certified, are limited by 638? No, what I'm saying is that under the agreement that BIA made with the tribe, it was to enforce laws on the reservation, to enforce federal and tribal law. And it's just incidental that the officer. That's what I'm saying. So you're saying it's 638, the agreement you're referring to. And that's what makes it, that's what limits what they can do to essentially what goes on in the, on tribal lands. That the original contract, that the provisions of the original contract. All right. And that the funding agreement of 2002 to 2007, et cetera, does not override the earlier contract and its limitations. Is that what you're saying? That's right, Your Honor. And the original contract also required that these officers have. Well, I see it in the original contract. I don't see it in the 2007 funding agreement. No, but the original contract required that they be peace officers. And this, the multi-funding agreement says that they should provide the necessary continuing and prosperity training. And this is because the original contract required that officers within the first year, the tribal officer was employed, that he had to, he or she would have to complete the peace officer training. Where is that? It's in the 638 contract. Okay, okay. And that's in the. That's all I have. Oh. Okay. And so it's really as counsel for appellants began his argument. It's three agreements that are relevant here. It's the original 638 contract, the compact, and the multi-year funding agreement. And under the original agreement, the contract, the agreement was that Grigg was supposed to provide the law enforcement services. I have. That's exactly where I get hung up. I have no problem with your position at all if it's 638, because 638 does not apply to off-reservation activities, that's my understanding. And that's right. And my question is, is that still the case after the funding agreement, which requires them to be Arizona post-certified, and Arizona post-certified under state law requires them to do a variety of things? It's not, it doesn't say you can't do it. I mean, it gives them the authority. But the United States was contracting with the tribe for them to perform, to enforce state law. No, no. I understand that. But it was required to be Arizona post-certified. And the question is supposing, supposing Arizona post-however, Arizona post-certification means, let's assume this for a second, means that they were, one way or another, it's in there, they were required to stop that car that day. Are you saying, you're saying that the government, the federal government wouldn't be responsible for that because that's under Arizona law and not under federal law? We're saying that at the point that the officer got out of his car, he was not carrying out the contract. He wasn't carrying out. He was carrying out Arizona law. Right. Because that's an incidental, the enforcement of state law is not what the contract was for. The primary enforcement of state law belongs to the state. I've thought about that. And the state has authorized. And we have BIA officers who are also AZ post-certified. And they can exercise. I'm sorry. Say it again. The BIA. Yeah. Officers. Officers who are federal employees who work for BIA. Right. Also, because of the money. They're required to be? They're required to be certified. And this is a requirement in all of the states where there are reservations and that there's this overlap. But I assume each state is different. We're talking each state's law. Right, right. Once you become certified. That's a requirement of the BIA so that officers can cooperate between federal, state, and tribal police forces. Can cooperate with each other. But you're saying that cooperation, the federal government has no responsibility for that cooperation when it occurs separately and off the reservation. Right. Anything further, counsel? We just urged the court to affirm the district court's decision. Because the officers were not carrying out the self-determination contract or compact at the time that they acted here. Thank you. Thank you very much, counsel. Mr. Rose, you have less than one minute for your side. Do you wish to use it? Just don't start out by saying I'll be brief. Well, I would just suggest if the police officer at the time that he gets out of his car, he's carrying out the contract with regard to the training. He steps out of the car. He's no longer carrying out the contract. But when he gets back into the car, does he now all of a sudden become a BIA officer? It just seems like I don't understand how an employment relationship goes into a timeout all of a sudden just because he got out of his car. Secondly, the 638 agreement was a three-year agreement. It expired. It doesn't have any effect in this case. Further ---- So we're looking just at the funding agreement. We're looking just at the funding agreement. That's correct, Your Honor. And then finally, the 638 agreement, in section 102, it talks about that the services shall be provided. Under the 638 agreement, section 102.1 in the excerpt of record, page 67, states that the services shall be provided in accordance with defined authority, procedures, and guidelines contained in the Gila River Tribal Law pursuant to 25 CFR, court decisions, and other applicable rules, regulations, ordinances, and statutes. So when the district court said I can only look at the four corners of this document and find that these tribal offices are only exclusively permitted to perform, to enforce federal law on tribal lands, that was erroneous because that section, 102.1, allows a court to look outside the document and into court cases and what has been written in the CFR. Very well. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'SCANNLAIN, Sack, BEA